UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JONAH NWAOKOCHA,

                 Plaintiff,

     against

HENRY J. SADOWSKI, Regional Counsel for the
Northeast Region of the Bureau of Prisons;
DENNIS HASTY, Former Warden of the Metropolitan
Detention Center; DR. PARRY HESS, Staff
Psychologist; DR. DIANA GUERRARO, Chief
Psychologist; LIEUTENANT MORANO, Duty
Lieutenant; THEODORE RAINES, Unit Manager;
CARLOS DUFF, Unit Manager; and JEAN and JOHN
DOES, unidentified prison guards,

                 Defendants.

-------------------------------------------------------------------X

MEMORANDUM, JUDGMENT
AND ORDER
02-CV-3371

APPEARANCES:

For the Plaintiff:

Harry C. Batchelder, Jr.
40 Wall Street, 24th Floor
New York, New York 10005
By: Marshall A. Mintz, Of Counsel

For the Defendants:

Roslynn R. Mauskopf
United States Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201
By: Laura D. Mantell, Assistant United States Attorney

JACK B. WEINSTEIN, Senior District Judge:

1



## I. Introduction

Jonah Nwaokocha, a federal prisoner, sues employees of the Metropolitan Detention Center ("MDC") in Brooklyn, New York, pursuant to the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Defendants are named in both their individual and official capacities. His various claims arise from what he alleges was: 1) the unnecessary cruelty of his confinement in the Special Housing Unit ("SHU") at the MDC and his subsequent transfer to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP"); and 2) loss of personal items, including legal papers, which allegedly occurred during his transfer.

This is one of at least ten actions that plaintiff has filed in federal court since his conviction; some raised challenges to plaintiff's conviction or sentence, while the remainder sought damages for wrongs alleged to have occurred during his term in federal custody.

Plaintiff failed to exhaust his administrative remedies before bringing suit on his constitutional tort claims. He has not demonstrated that amendment of his complaint would result in an actionable constitutional claim. Except for a small payment for unintentionally lost items, pursuant to the FTCA and agreed to by the government, plaintiff's claims are dismissed with prejudice, and his motion to amend is denied.

## II. Facts

Jonah Nwaokocha is currently incarcerated at the Federal Correctional Institution ("F.C.I.") in Fort Dix, New Jersey. He is serving a 57-month sentence for crimes, including violation of immigration laws, pursuant to sections 1326(A) and 1326(B)(2) of Title 8 of the United States Code. From October 22, 1999 to March 29, 2001, plaintiff was housed at the

Metropolitan Detention Center in Brooklyn, New York; during that period he was temporarily transferred to the MCFP in Springfield, Missouri.

On September 22, 2000, plaintiff was placed in the SHU of MDC to permit a suicide watch after prison officials became concerned about his erratic behavior. A suicide risk assessment conducted by Dr. Parry Hess on September 23, 2000, the day after plaintiff was transferred to the SHU, described him as being in an "acute psychotic condition," being "disoriented to place and time," and rambling "in a disorganized, angry, paranoid manner." Suicide Risk Assessment ("SRA") at 1. Plaintiff was confined in the SHU for one month, for treatment and observation.

On October 25, 2000, he was transferred to the MCFP for special care and treatment. He was removed from suicide watch that day. The post-suicide watch report prepared at MDC on the day he was transferred indicates that although plaintiff's behavior had improved, he still showed signs of delusional thoughts and he continued to refuse prescription psychotropic medication. Plaintiff remained housed at the MCFP, where he ultimately exhibited positive behavior and gained privileges. On March 29, 2001, he was transferred to the penitentiary at Fort Dix.

On October 15, 2001, plaintiff filed an administrative tort claim, dated October 9, 2001, with the Bureau of Prisons regarding: (1) the loss of personal property, which allegedly failed to follow him during his transfer from the MDC to the MCFP; and (2) his allegedly unconstitutional placement in the MDC's SHU and subsequent transfer to MCFP. He sought $500,205.00 in damages, $205.00 of which was for "property damage," and $500,000.00 of which was for "personal injury," based upon his loss of liberty and psychological injuries.

3

Defendants initially offered plaintiff $140.000 as compensation for the loss of property. Plaintiff rejected that claim and commenced the instant action in federal court.

Counsel was appointed by order dated November 2, 2004. Counsel helped prepare and file plaintiff's response to the defendants' Motion To Dismiss, or in the Alternative, for Summary Judgment. A hearing was conducted at which plaintiff was present by telephone and his counsel was physically present in court. All the facts included in counsel's post-hearing letter, dated March 21, 2005, are deemed alleged for purposes of the instant decision.

### III. Law

A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In evaluating such a motion, reference is made to the facts stated in the complaint and to attached exhibits. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). "If a judge looks to additional materials, the motion should be converted into a motion for summary judgment." *Id.* Factual allegations in the complaint are considered true, and the court reads the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences against the moving party. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994).

Rule 12(b)(6) may only provide grounds for dismissal of an action if it appears "beyond doubt that a plaintiff can prove no set of facts in support of his claim entitling him to relief." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). Nevertheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

4

## B. Summary Judgment

"Summary judgment is appropriate only if there is no genuine issue as to any material fact, Fed. R. Civ. P. 56(c), and the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Baisch v. Gallina*, 346 F.3d 366, 371 (2d Cir. 2003). When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *Id. See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In order to survive a motion for summary judgment, the non-movant must offer "specific facts showing that there is a *genuine issue for trial*." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (emphasis in original). To do so, the non-movant must do more than present evidence that is merely "colorable" or "not significantly probative." *Anderson*, 477 U.S. at 249. *See also Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) ("[M]ere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment.").

The court has considered materials outside the four corners of the complaint in this case, including the medical records of the plaintiff. Treatment of the Motion to Dismiss, or in the Alternative, for Summary Judgment, as a motion for summary judgment therefore is appropriate. The defendants served plaintiff with a Notice to Pro Se Litigant Opposing Motion to Dismiss or Motion for Summary Judgment, pursuant to Local Civil Rule 56.2, along with copies of the texts of Rule 12 and Rule 56 of the Federal Rules of Civil Procedure.

## C. *Bivens* Claims

Plaintiff asserts claims against defendants in their individual and official capacities under

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). "In a

*Bivens* action, alleged victims of constitutional violations by federal officials may recover

damages despite the absence of any statute specifically conferring such a cause of action."

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

1. Exhaustion

The Prison Litigation Reform Act ("PLRA"), states that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> The MDC [and the MCFP], where [plaintiff] was
> incarcerated during the period relevant to this [suit], [are facilities]
> operated by the U.S. Bureau of Prisons ("BOP"). The BOP
> provides prisoners a grievance procedure applicable to
> confinement-related issues. The procedure is called the
> Administrative Remedy Program ("ARP"), and consists of up to
> four steps, depending upon the circumstances. In some cases, the
> inmate is required to seek informal resolution of his complaint.
> Then, if the matter is not resolved, he must file an Administrative
> Remedy Request at his facility within twenty days of the incident.
> If the inmate is not satisfied with the facility's reply, he may file a
> Regional Appeal to the BOP's Regional Director within twenty
> days of the warden's response. In some situations, including those
> involving "sensitive subjects," appeals from disciplinary
> proceedings, and other specified matters, the inmate may begin the
> process with a Regional Appeal. In all cases, if the prisoner is not
> satisfied with the Regional Director's resolution of the matter, he
> may appeal to the Central Office, within thirty days.

*Johnson v. Testman*, 380 F.3d 691, 693 (2d Cir. 2004).

In order for a *Bivens* claim against a defendant in an individual capacity to stand, a

plaintiff must exhaust his or her administrative remedies as required by the Bureau of Prisons

6

regulations. *See* 28 C.F.R. § 542.10; 42 U.S.C. § 1197e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2000) ("[F]ederal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."); *Ortiz v. McBride*, 380 F.3d 649, 656 (2d Cir. 2004) (holding that action was improperly brought based on failure to exhaust administrative remedies as to claim). Defendants have not waived compliance with the exhaustion requirement. *See, e.g., Johnson v. Testman*, 380 F.3d 691, 696 (holding that affirmative defense of non-exhaustion is waiveable).

The United States Court of Appeals for the Second Circuit has recognized that while the PLRA's exhaustion requirement is mandatory, "certain caveats apply." *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir. 2004). Non-exhaustion is an affirmative defense subject to estoppel in cases where prison officials inhibit an inmate's ability to utilize administrative grievance procedures. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (per curiam). The Court of Appeals has also held that, in certain situations, administrative remedies may not be "available," 42 U.S.C. § 1997e(a), to prisoners seeking redress of their grievances. *See, e.g., Abney v. New York Dep't of Corr. Servs.,* 380 F.3d 663, 669 (2d Cir. 2004). "Such circumstances include, but are not limited to, instances where the prisoner obtains a favorable disposition of his grievance, only to find, after the time for filing an administrative appeal has expired, that the relief he had won was not forthcoming." *Giano*, 380 F.3d at 677. *See also Hemphill v. State of New York*, 380 F.3d 680, 682 (2d Cir. 2004) (vacating and remanding to the district court for determination of whether special circumstances justified the plaintiff's failure to pursue available remedies).

The filing of an administrative tort claim by a prisoner does not excuse the prisoner's failure to meet the separate exhaustion requirements for a *Bivens* claim under the PLRA. *See, e.g., Owusu v. Federal Bureau of Prisons*, No. 02-0915, 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7,

2003) ("Here, while plaintiff did exhaust the available administrative remedies for his FTCA claim, he did not do so for his *Bivens* claim under the PLRA. The exhaustion procedures under the two statutes differ, and the fulfillment of one does not constitute satisfaction of the other."); *Hylton v. Federal Bureau of Prisons*, No. 00-5747, 2002 WL 720605, at *2 (E.D.N.Y. Mar. 11, 2002) ("[I]t is entirely possible that [plaintiff] exhausted his administrative remedies for purposes of the FTCA without exhausting remedies pursuant to the PLRA for purposes of filing a *Bivens* claim.").

### 2. Immunity

#### a. Sovereign

Because an action against a federal agency or federal officers in their official capacities is deemed brought against the United States, such suits are barred under the doctrine of sovereign immunity, unless immunity is waived. *See Federal Deposit Ins. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [28 U.S.C.] § 1346(b) for constitutional tort claims."); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[T]he United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts, and . . . a claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA."); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (noting that *Bivens* actions "must be brought against the federal officers involved in their individual capacities," because "[u]nder the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent."); *Owusu v. Federal Bureau of Prisons*, No. 02-0915, 2003 WL 68031, at *1 (S.D.N.Y. Jan. 7, 2003) ("[T]he United States has not waived its sovereign immunity as to constitutional tort claims for money damages, such as

8

this."); *Paulino-Duarte v. United States*, No. 02-9499, 2003 WL 22533401, at \*3 (S.D.N.Y.

Nov. 7, 2003) ("Once again, under the doctrine of sovereign immunity, suits against the United

States, its employees and agencies cannot be brought absent consent. Here, there is no consent

by statute or other means permitting a *Bivens* claim to be brought against the United States,

BOP, MCC/NY, or [the warden] in his official capacity. . . . However a *Bivens* claim may be

brought against a federal officer in his individual capacity.").

       b. Qualified

    "The doctrine of qualified immunity protects government officials [in their individual

capacities] from suits for money damages where 'their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'"

*Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). "The doctrine 'serves to protect government officials from the burdens of costly,

but insubstantial, lawsuits.'" *Id.* (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).

> In evaluating a summary judgment motion based on
> qualified immunity, we perform a two-part test. We ask first
> whether the facts, viewed in the light most favorable to the
> plaintiff, establish a constitutional violation. If they do not, the
> plaintiff may not recover because he has suffered no [cognizable]
> wrong . . . . If the facts do establish a constitutional violation,
> however, we proceed to a second inquiry, asking whether it would
> be clear to a reasonable officer that his conduct was unlawful in
> the situation he confronted. If a reasonable officer could have
> believed that the challenged conduct was lawful at the time of the
> violation, then qualified immunity bars the claim.

*Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004). The defendants in the instant action have

raised the defense of qualified immunity.

    3. Merits

       a. SHU and MCFP Confinement

In order for plaintiff's *Bivens* claim to survive a motion to dismiss or for summary judgment, the pleadings must contain more than mere conclusory allegations that a right has been violated. *See, e.g., Black v. United States*, 534 F.2d 527, 528 (2d Cir. 1976) ("A complaint against public officials alleging the deprivation of constitutional rights must detail the basis of that claim with greater specificity than [plaintiff has] here provided."). *But cf. Skierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) (reiterating the language of Rule 8(a) of the Federal Rules of Procedure that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief.").

In order to plead a claim challenging the constitutionality of the length and conditions of confinement, an inmate must demonstrate that the conditions and duration of his confinement "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (citing *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Further, "discretionary confinement" does not implicate any liberty interest under the Due Process Clause, since it is "within the range of confinement normally to be expected . . . ." *Sandin v. Connor,* 515 U.S. at 487.

The Court of Appeals for this circuit has held that a length of confinement under 101 days, absent other allegations that confinement has been atypical, *generally* will not establish a constitutional violation. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) ("To be sure, with respect to 'normal' SHU confinement, we have held that a 101-day confinement does not meet the *Sandin* standard of atypicality."); *Palmer v. Richards*, 364 F. 3d 60, 64 (2d Cir. 2004) ("Where the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record of the conditions of this confinement relative to ordinary prison conditions is required.") (internal quotation omitted); *Colon v. Howard*, 215 F.3d 227, 232 n.5

(2d Cir. 2000) ("We do not exclude the possibility that SHU confinement of less than 101 days could be shown . . . to constitute an atypical and severe hardship under *Sandin*."); *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (holding that confinement in the SHU at MDC for 101 days did not constitute hardship); *Alvarado v. Kerrigan,* 152 F. Supp. 2d 350, 354 (S.D.N.Y. 2001) (finding 93 days not atypical); *Williams v. Goord,* 111 F. Supp. 2d 280, 288-89 (S.D.N.Y. 2000) (finding 75 days not atypical).

### b. Destruction of Property

Construed most favorably to the plaintiff, his *Bivens* action, as it relates to the destruction of property – including legal papers – states a claim of an unconstitutional denial of his right of access to the courts. The constitutional sources of the right of access include the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution. *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). In *Daniels v. Williams*, 474 U.S. 327, 328 (1986), the United States Supreme Court held that negligence will not suffice to establish a due process violation. *Id.* at 328 ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original); *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) ("By ruling in *Daniels* that a negligent act could not amount to a constitutional deprivation, the Court . . . clearly articulated that a finding of intentional conduct was a prerequisite to a due process claim."). Thus, negligently misplacing an inmate's property does not establish a denial of due process. *See, e.g.*, *Daniels*, 474 U.S. at 333 ("That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests. The enactment of tort claim statutes, for example, reflects the view that injuries caused by such negligence should generally be redressed.

11

It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns.").

The United States Constitution "requires no more than reasonable access to the courts." *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)). The loss of law books and appeal papers will not be found to constitute a denial of due process rights unless the plaintiff has suffered actual injury because, "denial of legal resources [has] prejudiced pending litigation." *Lewis v. Casey*, 518 U.S. 343, 353 (1996). *See also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("To state a claim for denial of access to the courts . . . a plaintiff must allege that the defendant took or was responsible for actions that hindered . . . efforts to pursue a legal claim."); *Cancel v. Goord*, No. 00-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim."); *Konigsberg v. Lefevre*, 267 F. Supp. 2d at 261 ("Prison officials may only be held liable for such injury if they 'frustrated or impeded a prisoner's' efforts to pursue a non-frivolous legal claim.").

D. Federal Tort Claims Act

The FTCA "waives the United States's sovereign immunity for certain classes of torts claims." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005). *See also Fuentes v. Parks*, No. 03-2660, 2005 WL 911442, at *3 n.5 (S.D.N.Y. Apr. 18, 2005) ("The FTCA 'does not apply to suits for violation of federal constitutional or statutory rights, but provides government employees with immunity against claims of common-law tort.'") (quoting *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991)).

1. Exhaustion

Section 543.31 of Title 28 of the Code of Federal Regulations provides that a federal prisoner may file a claim pursuant to the FTCA if he or she is "the injured person or the owner of . . . damaged or lost property." If a claim is denied or the claimant is unsatisfied with a settlement offer, the prisoner may "request, in writing, that the Bureau of Prisons reconsider [the] claim." 28 C.F.R. § 543.32. Should the prisoner be dissatisfied with the "final agency action," he or she may "file suit in an appropriate U.S. District Court as no further administrative action is available." 28 C.F.R. § 543.32. *See also Owusu*, 2003 WL 68031, at *2 ("The FTCA's administrative review requirements . . . merely require an inmate to file his or her claim with the Regional Office and appeal to the General Counsel's office . . . .") (citing 28 C.F.R. §§ 543.31, 543.32).

2. Certification

The FTCA requires certification by the Attorney General before the United States can be substituted as the party defendant. 28 U.S.C. § 2679(d)(1) ("*Upon certification* by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.") (emphasis added). "Nonetheless, in the absence of a certification by the Attorney General, the statute permits the court to certify." *B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc.*, 23 F.3d 709, 715 (2d Cir. 1994). *But see id.* at 717 (Glasser, J., concurring) ("Insofar as [the majority] suggests that the statute authorizes the court to certify *sua sponte*, I finding nothing in § 2679(d)(3) which supports it."). Following

certification, the court may substitute the United States as the defendant in an FTCA claim so that the case may proceed.

### 3. Merits

The FTCA provides that the federal district courts shall have exclusive jurisdiction over damages claims against the United States for injury or loss of property, or for personal injury or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1).

> The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment.

*Celestine*, 403 F.3d at 80.

Pursuant to the FTCA, prison inmates may bring claims against the United States for loss or damage of property while in prison. 28 U.S.C. §§ 1346(b), 2671-2680. FTCA claims can only be brought against the United States, and not against federal employees individually. 28 U.S.C. § 2679(b)(1) ("The remedy against the United States . . . is exclusive of any other civil action or proceeding for money damages . . . against the employee whose act or omission gave rise to the claim . . . ."); *B & A Marine Co., Inc. v. American Foreign Shipping Co., Inc.*, 23 F.3d 709, 713 (2d Cir. 1994) ("To emphasize the exclusivity of the remedy against the United States under the FTCA, § 2679(d) requires that the United States be substituted as *the* party defendant upon certification by the Attorney General or the court that the defendant employee was acting within the scope of his employment.") (emphasis in original).

### E. Amendment of Plaintiff's Complaint

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend shall be "freely given when justice so requires." A court nevertheless has discretion to dismiss with prejudice if it believes that amendment would be futile or would unnecessarily expend judicial resources. *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 92 (2d Cir. 2003); *Prins v. Coughlin*, No. 94-2053, 1995 WL 378526, at *1 (S.D.N.Y. June 26, 1995) ("Although leave to amend must be 'freely given' under the Rule 'when justice so requires,' and although the proposed and actual pleadings of a *pro se* litigant must be held to less stringent standards than those applied to formal proceedings drafted by lawyers, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), it remains true that if a proposed amendment would simply state a claim that would be subject to dismissal for insufficiency . . . the proper course is to deny the motion to amend . . . .").

## IV. Application of Law to Facts

### A. *Bivens* Claims

Construed liberally, plaintiff's complaint raises *Bivens* claims against all the defendants in both their individual and official capacities: Henry J. Sadowski, regional counsel for the Northeast Region of the Bureau of Prisons; Dennis Hasty, former warden of MDC; Dr. Parry Hess, MDC Staff Psychologist; Dr. Diana Guerraro, MDC Chief Psychologist; Lieutenant Morano, MDC Duty Lieutenant; Theodore Raines and Carlos Duff, MDC Unit Managers; and various Jean and John Does, unidentified prison guards.

All *Bivens* claims brought against the defendants in their official capacities must be dismissed since sovereign immunity is not waived under *Bivens*.

Defendants correctly indicate that plaintiff has submitted no documentation demonstrating that he attempted to follow the four-step administrative process required by the BOP and the PLRA. Bureau of Prisons Records reveal that, although plaintiff has filed for

remedies approximately twenty-seven times during his incarceration, he did not follow any of the steps required by the BOP's administrative review procedure before bringing the instant *Bivens* action. Plaintiff's claims that he made numerous complaints to Bureau of Prisons employees that his property had been lost do not suffice to exhaust his administrative remedies.

In counsel's post-hearing letter, dated March 21, 2005, he indicates that "Plaintiff filed multiple BP-9 forms regarding his confinement in the Special Housing Unit and Transfer to a mental health facility." Mar. 21, 2005 Ltr. at 1. There is no evidence in the record to support this contention. He further represents that plaintiff did not receive a response from the Bureau of Prisons regarding these complaints, and therefore BOP personnel would not provide him with the forms necessary to appeal. *Id.* The record is likewise bereft of evidence for this proposition. Absent evidence that administrative remedies have been exhausted, and without any credible reason to exempt plaintiff from the exhaustion requirement, the plaintiff's *Bivens* claims against all defendants are dismissed on summary judgment.

Assuming that the plaintiff had exhausted his administrative remedies under the PLRA, his *Bivens* claims would still fail as a matter of law. First, the complaint does not properly allege the personal involvement of each individual defendant in the alleged constitutional deprivation. Second, the constitutional violations alleged in the complaint would not entitle plaintiff to relief under *Bivens*. Third, the defendants are entitled to qualified immunity, since their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Finally, actions taken were indubitably designed to protect plaintiff against himself and to provide appropriate medical care.

Plaintiff's claims that his constitutional rights were violated as a result of his 30-day confinement in the SHU are not actionable. Placement in disciplinary segregation,

administrative detention and other forms of "discretionary confinement" are "within the range of confinement to be normally expected" by a prisoner; as such, no liberty interest is implicated unless the punishment imposed amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 487 (1995) (citations omitted). *A fortiorari*, that includes time of segregation on a justified suicide watch.

Plaintiff contends that MDC psychologists interviewed him, "found nothing wrong," and "despite those findings, the Drs., together with Warden Hasty, transferred Plaintiff to the mental hospital (MCFP) after a 30-day confinement in the segregation unit." Mem. Opp. Summ. J. at 8. Yet plaintiff's pleadings in the instant action, medical records, and pleadings in other actions leave no room for doubt that it was appropriate for authorities to conclude that he was seriously mentally ill. Confronted with significant warning signs about the plaintiff's mental state, the defendants placed plaintiff on suicide watch and then transported him to a facility better equipped to provide him with the kind of specialized psychiatric treatment he required. *See* SRA at 1-2 ("Today's interview and a review of the suicide watch log book found acute psychotic symptoms. During the night, [plaintiff] was repeatedly masturbating in front of the observer, cleaning himself with toilet water, making inappropriate sexual gestures to staff, pulled [sic] out pubic hair and put the hair on the food slot, head banging, and playing with feces. . . . [Plaintiff] was unwilling to respond to inquiry and efforts to discuss medication referral and treatment were fruitless. [He] terminated the interview by washing his hands vigorously and repeatedly in the toilet, returning his mattress to his bed, then jogging and shouting on top of his bed.").

Given the emotional and psychological challenge that prison imposes on mentally ill inmates, and the sometimes severe effects that can result – including, but not limited to, inmate suicides and harm to others – it is important that prison officials be encouraged to attend to

17

mental health considerations rather than penalized for having done so. *See, e.g.*, Fox Butterfield, *Asylum Behind Bars: Prisons Replace Hospitals for the Nation's Mentally Ill*, N.Y. TIMES, Mar. 5, 1998, at A1 ("Though some people do benefit from regular medication while in jail, others suffer as the stress deepens their depression, intensifies delusions or leads to a psychotic break. Suicide is a risk: 95 percent of those who commit suicide in jail or prison have a diagnosed mental disorder, a study in the American Journal of Psychiatry found."). *Cf.* Paul von Zielbauer, *Missed Signals in New York Jails Open Way to Season of Suicides*, N.Y. TIMES, Feb. 28, 2005, at A1 ("In their reports, investigators faulted a system in which patients' charts were missing, alerts about despondent inmates were lost or unheeded, and neither medical personnel nor correction officers were properly trained in preventing suicide, the leading cause of deaths in American jails."). In the instant case, plaintiff's confinement in the SHU and his transfer to the MCFP reflect the prison's efforts to protect, rather than harm, Mr. Nwaokocha. Inaction may well have led to a tragic result.

Plaintiff's unsupported assertion that his possessions were misplaced maliciously, rather than negligently, is belied by the record. There is no evidence to suggest that any such loss, if it did occur, caused prejudice to an otherwise meritorious appeal. Plaintiff's insistence that the facts giving rise to this complaint were the product of conspiracies, malice, and deception – in the face of a record that bespeaks the contrary – is also unsupported.

B. Amendment of Plaintiff's Complaint

Read with the liberal eye cast upon pleadings submitted *pro se*, plaintiff's substantive *Bivens* claims regarding confinement and denial of court access are defective in a number of respects, indicating that, even if exhausted, they could not survive summary judgment and proceed to hearing. There is no likelihood that repleading would revive them. Although

plaintiff has identified legal claims that arise properly under *Bivens*, the factual allegations from which his claims stem do not satisfy the requirements governing such claims.

Plaintiff premises his constitutional claims on allegations that his confinement and transfer were the result of a conspiracy against him at MDC between Warden Hasty and his psychiatrists, rather than a response to his apparent psychotic behavior. Additionally, plaintiff alleges that his personal belongings never followed him from MDC to the MCFP, and that along with religious books, his walkman, CDs, and family photos, he never received *pro se* legal writings and law books that he needed to work on one of his legal appeals.

Plaintiff raises claims that: (1) his "14th Amendment right to be free of unjustified and excessive use of force" was violated when he was forced into handcuffs and transported to the SHU without an incident report, and housed in SHU for 30 days before being transferred to the MCFP; (2) his First and Fourteenth Amendment rights were violated when his legal pleadings for an appeal and his law books were not sent to him at his new placement; (3) defendants' actions "denied plaintiff's Due process [sic] of law, violated Federal Rules and institutional regulations, policy statements," and "violated Federal Laws, assault and battery and the Bureau of Prison [sic] with respect to the lawful use of force" when he was allegedly "cuffed and forced to (SHU) for no reason," and "transfered [sic] to [a] mental hospital for no reason;" and (4) various prison officials and employees violated Bureau of Prisons regulations and federal law with respect to the handling of his belongings, denying him his property and access to the courts. Compl. ¶¶ 21-27.

1. SHU and MCFP Confinement

With regard to plaintiff's first and third causes of action, alleging that his thirty-day confinement in the SHU and his subsequent transfer to the MCFP violated his rights, he contends

19

that he was not suffering from mental illness at the time of his confinement or transfer, but rather that the doctors and the warden conspired against him to have him transferred. The reports submitted by defendants regarding the reasons for plaintiff's confinement and transfer, along with plaintiff's own pleadings in *Nwaokocha v. Haage*, 01-CV-0517 (E.D.N.Y.), in which he requests that the statute of limitations be tolled due to his mental illness during the very same time period, suggest that institutional officials were acting in good faith when they concluded that plaintiff was suffering from mental illness, placed him in the SHU, and then transferred him to the MCFP. Suicide watch reports from the SHU indicate that plaintiff was behaving in a psychotic manner, suffering from delusional thinking, and refusing psychotropic medication. The confinement and transfer were properly within the discretion of prison officials. No litigable liberty interest was implicated. Reports regarding plaintiff's lucid thinking and good behavior at the MCFP do not demonstrate that plaintiff was not reasonably believed to be mentally ill when he was transferred, nor do they set forth details suggesting an actionable conspiracy at MDC. Moreover, plaintiff has failed to make any allegations that he suffered atypical hardship while confined in the SHU.

No amendment to plaintiff's complaint could establish the claims based on a discretionary placement for psychiatric care and treatment.

2. Destruction of Property

With respect to plaintiff's second and fourth causes of action, he claims that the defendants "intentionally, maliciously destroyed," Compl. ¶ 17, his property in violation of his constitutional right to court access and prison regulations. This allegation is based solely on the fact that, despite repeated requests that he receive his property, allegedly it was never delivered to him by prison officials. Plaintiff has not offered any proof for his contention that his property

was *intentionally* destroyed. At an evidentiary hearing on this matter in this court, defendants indicated that they do not know what happened to the property because all of the transfer records regarding its whereabouts were lost in a flood. Their contention is credible and is accepted as a fact in the absence of any contrary evidence.

Based on his alleged loss of property, plaintiff contends that he was denied access to the courts because law books and papers that were essential to one of his appeals were among the belongings that prison officials lost during his transfer from MDC to the MCFP. In the complaint, there is reference to an "Exhibit 2;" no exhibit is attached. Counsel for the plaintiff has failed to submit any evidence that specific missing documents had any possible effect on the disposition of an appeal.

Defendants contend that because plaintiff had representation during the period in question and worked on other appeals in the MCFP library, he was not denied access to the courts by the loss of his legal documents. This evidence certainly suggests that plaintiff was afforded reasonable access to the courts at the time he was incarcerated at MCFP. Construing the evidence in the manner most beneficial for the plaintiff, it appears his pleadings would be insufficient even if his complaint were amended.

This claim is meritless and permission to amend is denied.

C. Federal Tort Claims Act

The United States seeks substitution as the sole defendant so that judgment may be entered for an amount not to exceed $150.00. Even if the FTCA "did not authorize a *sua sponte* certification by the court," the court finds that the requirement for a certification by the Attorney General provided pursuant to sections 2679(d)(1) and (2) has been satisfied. *B & A Marine Co.,*

*Inc. v. American Foreign Shipping Co., Inc.*, 23 F.3d 709, 717 (2d Cir. 1994) (Glasser, J.,

concurring).

> A "certification" is defined as a "formal assertion in writing of
> some fact." Black's Law Dictionary 206 (5th ed. 1979). To regard
> [the request for substitution of the United States as sole defendant]
> of the United States Attorney as anything other than an assertion
> and thus a certification that the defendants were employees acting
> within the scope of their employment would be to exalt form over
> substance.

*Id.*

Evidence presented at the hearing in this court establishes that the property of plaintiff

allegedly lost by the government is worth $150.00.

## V. Conclusion

The United States is substituted as the sole defendant for purposes of the FTCA claim. A

judgment is entered in the amount of $150.00, in order to compensate the plaintiff for the alleged

loss of his property.

Defendants' motion for summary judgment as to plaintiff's constitutional tort claims is

granted. Plaintiff's request to amend his pleadings is denied. The remainder of plaintiff's claims

are dismissed with prejudice.

No costs or disbursements.

SO ORDERED.

_____
Jack B. Weinstein
Senior U.S.D.J.

Dated: May 17, 2005
Brooklyn, New York